## Case No. 17,244.

### The WASHINGTON IRVING.

[2 Ben. 318;[1] 7 Int. Rev. Rec. 109.]

District Court, E. D. New York. March, 1868.

LIEN — FOREIGN VESSEL — DELAY OF PAYMENT — CREDIT OF OWNER — PAYMENT BY DRAFT.

1. The fact, that a vessel which is repaired or supplied, is not in her home port, in the absence of other circumstances, makes a case of apparent necessity for the credit of the vessel.

[Cited in Harney v. The Sydney L. Wright, Id. 6,082a.]

2. This apparent necessity may be dispelled by proof of other circumstances, showing that the necessity for the credit did not exist, and did not appear to the material man to exist, at the time of his employment.

[Cited in Berwind v. Schultz, 25 Fed. 917.]

3. An agreement for delay of payment, in most cases, is additional evidence of the existence of an apparent necessity for the credit of the vessel.

4. An agreement to do the work on the personal credit of an agent of the vessel, would be sufficient to defeat the claim of the material man against the vessel.

5. The existence of such an agreement is a fact which must be clearly proved.

6. Where the agent of a vessel, some months after repairs were done on her, and after part payment, gave a draft on a third party for the remainder, which was never paid or accepted, and was surrendered on the trial, held, that that did not amount to payment, nor did it go to show that the agreement for the work looked to the personal credit of the agent alone.

In admiralty.

Emerson, Goodrich & Wheeler, for libellants.

Beebe, Dean & Donohue, for claimants.

BENEDICT, District Judge. This is an action to recover a bill of repairs furnished by the libellant, Young Tall, in Baltimore, to a vessel foreign to that port, for the amount of which a lien is claimed by the libellant to have been created under the maritime law; while the claimant insists that no such lien exists. Since the decisions of Mr. Justice Nelson, in the recent cases of The James Guy [Case No. 7,196], and The Neversink [Id. 10,133], it must be considered that any doubts which may have arisen as to the law, applicable to the demands of material men against foreign vessels, no longer exist. Those decisions put a construction upon the opinion of the supreme court, in the case of Pratt v. Reed [19 How. (60 U. S.) 359], which restores the law to its ancient, and, as was supposed, well-settled ground. Whether, then, a lien has been created in any particular instance depends upon the circumstances of the case, as they appear in evidence. If it appear that the vessel was in apparent need of the repairs for her employment or preservation, and if she was foreign to the port where the necessity was supplied, then, in the absence of contradictory circumstances, the maritime law presumes a necessity for the credit

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

of the vessel, from the fact that she was at the time in a foreign port. The fact that the vessel was not in her home port, in the absence of other circumstances, makes a case of apparent necessity for the credit of the vessel. Thus Story, J., says, in The Jerusalem [Case No. 7,294]: "It will be recollected that this is a foreign vessel, and that, by the general maritime law, every contract of the master for supplies and repairs imports a hypothecation." So, also, Curtis, J., in the case of Smith v. The Eastern Railroad [Id. 13,039], says, speaking of a vessel in a foreign port: "Under the maritime law, materials and supplies are presumed to be furnished on the credit of the vessel and owners until the contrary is proved." This apparent necessity, which springs from the fact that the vessel is in a foreign port, may, however, in all cases, be dispelled by proof of other circumstances, showing that the necessity for the credit did not exist, and did not appear to exist to the material man, at the time of his employment. Applying this rule of the maritime law to the present case, it is manifest that facts sufficient to create a lien are proved—if their effect be not overthrown by the other circumstances in proof—for the necessity of the repairs is shown, and it is conceded that the vessel when in Baltimore, was in a foreign port. The question of the case, then, is, whether the other facts averred in the answer, and proved by the evidence, are sufficient to warrant a conclusion upon the whole case, that it was apparent to the libellant, at the time of his employment, that there was no necessity for the credit of the vessel, or if such apparent necessity existed, credit was not given to the vessel. Turning then to the answer, it is found to aver, as matter of defence, that, by the agreement upon which the repairs were furnished, they were to be furnished upon the personal and individual credit of George Olney, and were to be furnished upon a credit of sixty days. As to the fact of an agreement for delay of payment, the proof is not very satisfactory, consisting, as it does, of the statement of Olney, which is contradicted by the libellant, and which, if taken as stated, hardly makes out any definite agreement for delay. But conceding that there was such an agreement, it does not tend to show the absence of an apparent necessity for the credit of the vessel, nor that such credit was not given, but the contrary, for Olney was a non-resident, and, as he himself says, in doubtful circumstances; the owner (Mott) was not present, nor, so far as was made known, had he funds in Baltimore to be applied to the payment of this bill, while Olney, also, was without money in hand, so applicable, as appears from his asking time, and his promises to pay as soon as he could get money from Washington. If it was the understanding that this vessel, which was in Baltimore temporarily, was to be surrendered by the libellant, and a delay of sixty days given for payment, it seems quite clear that the necessity for the credit of the vessel was not only apparent, but actual. An agreement for delay

of payment, in most cases, is additional evidence of the existence of an apparent necessity for the credit of the vessel. "The truth is, that the maritime law presupposes a credit given, a delay of payment, an intentional postponement of the right to enforce the claim, in rem, at the same time that it creates the lien." Story, J., The Nestor [Case No. 10,126]. See, also, The Eliza Jane [Id. 4,363]. But the answer further sets up the existence of an agreement between George Olney and the libellant, whereby the repairs in question were to be furnished upon the personal and individual credit of Olney, and not upon the credit of the vessel. Such an agreement, if proved, would be sufficient to defeat the claim of the libellant, and the existence of such an agreement is a fact which must be clearly proved. Newberry v. The Fashion [Id. 10,143]. I see nothing in the attending circumstances which tends to prove the existence of such an agreement, and the decision of the point must rest, for the most part, upon the evidence given by Olney and the libellant. Upon this question the testimony of the libellant is most positive. He declares that he did the work upon the credit of the boat; that he would not have done the work upon the credit of Olney, and that he made no contract with Olney. The testimony of Olney upon this subject, when examined, appears by no means equally clear; in fact, he nowhere says definitely that the work was bargained for upon his personal credit, while Mr. Mott, the owner, testifies that he gave Olney instructions to draw on him for any repairs on the boat, and that he himself paid $2,500 or $3,000 on her account. It does not seem probable that Olney, under such circumstances, would have assumed upon himself the exclusive responsibility for the work, for it nowhere appears in evidence that, as between Olney and Mott, Olney was to bear the expense of the repairs. Mott was the owner then, and is the claimant now. He testifies: "I gave Olney instructions to draw on me for any repairs on her," and he does not pretend that the repairs were not for his account. The work was charged to the vessel, and to use the language of Mr. Justice Nelson, in the case of The Prospect [Id. 11,443], September, 1854, "There is nothing in the proofs to rebut or disprove the presumption of law, arising out of the transaction, that the credit was given to the vessel. The burden lay upon the respondent to show affirmatively that it was given—not to the ship, but to the owner." See, also, The City of New York [Id. 2,758], Nelson, J., October, 1854. As to the further fact averred in the answer, that the bill has been paid by draft, the evidence is, that some months after the work was completed, and after $800 had been paid on account, Olney gave his draft on one Healy for the balance, which was never paid, nor, as appears, accepted, and which is now surrendered. This does not amount to payment, nor does it go to show that the agreement for the work looked to the personal credit of Olney alone. Indeed, the draft, mentioning

as it does upon its face the vessel, may be considered some evidence that the credit of the steamer was then considered a part of the transaction. My conclusion, therefore, is, that the libellants are entitled to recover the sum of $708.37, being the balance due upon the bill, with interest.